UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |  | |
|---|---|---|---|
| PAUL CRAIG WORRALL, | § | | |
| | § | | |
| Plaintiff, | § | | |
| | § | | |
| v. | § | | |
| | § | CIVIL ACTION NO. 3:22-CV-0392-B | |
| RIVER SHACK LLC d/b/a | § | | |
| WOODSHED SMOKEHOUSE and | § | | |
| LOVE STYLE, INC., | § | | |
| | § | | |
| Defendants. | § | | |

## MEMORANDUM OPINION AND ORDER

Before the Court is River Shack LLC d/b/a Woodshed Smokehouse and Love Style, Inc. (collectively, River Shack)'s Motion to Dismiss (Doc. 6). For the following reasons, the Court **GRANTS** River Shack's motion.

### I.

### BACKGROUND[1]

This is an employment disability discrimination case. Plaintiff Craig Worrall (Worrall) worked as a Restaurant Manager for River Shack from September 9, 2020, to March 14, 2021. Doc. 1, Compl., ¶¶ 13, 39–40. On or about March 1, 2021, Worrall learned that his wife tested positive for COVID-19 (COVID). *Id.* ¶ 24. "Worrall's wife was very ill with COVID symptoms[,] and he had to stay home to care for her." *Id.* ¶ 24. Worrall took a COVID test that same day and two days later found out that he also had COVID. *Id.* ¶¶ 23, 26. On March 4, a River Shack employee told Worrall that while he was not at work, the most he could be paid was "50% of 90% of [his] wage." *Id.* ¶ 28.

---

[1] The Court draws the following factual account from Plaintiff's Complaint (Doc. 1).

On March 5, after Worrall inquired, River Shack Human Resources ("HR") confirmed to Worrall that he could return to work with full pay if he produced a negative COVID test. *Id.* ¶¶ 29–30. Worrall took a second test that same day, tested negative, and went to work from March 6, 2021, to March 10, 2021. *Id.* ¶¶ 30–31. On March 10, HR and the Chief Operating Officer requested that Worrall take a third test, which he did on March 11. *Id.* ¶¶ 32–34. On March 13, Worrall was notified that he had again tested positive for COVID. *Id.* ¶ 34. After his positive test, "Worrall began to feel the effects of COVID-19, such as a lack of energy to perform daily tasks, and was instructed to not leave his home for fourteen . . . days." *Id.* ¶ 37. On March 14, River Shack terminated Worrall for "falsification of documents." *Id.* ¶¶ 39–40. Worrall asserts that he has records that all three COVID tests were "administered and signed by an attending physician or official" and claims that "falsification of documents" was a "pretext to discriminate against him on the basis of disability." *Id.* ¶¶ 38, 40, 46.

Worrall filed his complaint on February 17, 2022. Doc. 1, Compl. Specifically, Worrall makes four claims: (1) disability discrimination under the Americans with Disabilities Act (ADA); (2) disability discrimination under Chapter 21 of the Texas Labor Code (TLC) or the Texas Commission of Human Rights Act (TCHRA)[2]; (3) associational discrimination under the ADA; and (4) associational discrimination under the TCHRA. River Shack filed a motion to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6) on May 2, 2022. Doc. 6, Mot. The motion being ripe, the Court considers it below.

---

[2] In his complaint, Worrall alleges violations of the TLC, and River Shack refers to these same claims as violations of the TCHRA. As the Court will explain, the two parties are referring to the same statute. For purposes of clarity, the Court will now only reference the TCHRA. *See infra* note 4.

## II.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted). But the court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

To survive a motion to dismiss, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). When well-pleaded facts fail to meet this standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (quotation marks and alterations omitted).

## III.

## ANALYSIS

Below, the Court addresses the threshold issues of whether Worrall has plausibly alleged facts showing that his and his wife's COVID illnesses were disabilities under the ADA, and thus the TCHRA. The Court then addresses Worrall's claims that River Shack discriminated against him for his disability under the ADA and TCHRA, and against him for his wife's disability under the ADA.[3]

A.  *Discrimination Under the ADA and TCHRA (Worrall)*

The ADA prohibits employment discrimination against a qualified individual based on the individual's disability. 42 U.S.C. § 12112(a); *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014). The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). The term "disability" is construed broadly to ensure coverage in accordance with the statute. 42 U.S.C. § 12102(4)(A). The TCHRA definition of "disability" conforms to the ADA definition.[4]

---

[3] Defendants argue that the "TCHRA does not recognize disability discrimination based on association with an individual with a disability." Doc. 7, Defs.' Br., 2. The Court is unaware of any Texas court or Fifth Circuit opinion resolving the question of whether Texas law would recognize an associational discrimination claim. *Spencer v. FEI, Inc.*, 725 F. App'x 263, 267 (5th Cir. 2018) (per curiam) (citing *Grimes v. Wal-Mart Stores Tex., L.L.C.*, 505 F. App'x 376, 380 n. 1 (5th Cir. 2013)). However, even if a claim under the TCHRA were viable, Worrall waived his state law claim for associational discrimination. Doc. 16, Resp., 1 n.1. ("Plaintiff hereby withdraws his claim for associated disability discrimination under the TLC.").

[4] In 1993, the Texas Legislature amended the TCHRA to "mod[ify] the definition of 'disability' . . . to conform it with the ADA definition." *Little v. Tex. Dep't of Crim. Just.*, 148 S.W.3d 374, 377 (Tex. 2004). This "part of the [T]CHRA was codified in the TLC." *Id.; see also* Tex. Lab. Code Ann. § 21.002(6) (defining "disability" to mean "a mental or physical impairment that substantially limits at least one major life activity of that individual, a record of such an impairment, or being regarded as having such an impairment").

To "be substantially limited means to be unable to perform a major life activity that the average person in the general population can perform, or to be significantly restricted in the ability to perform it." *EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 614 (5th Cir. 2009) (citing 29 C.F.R. § 1630.2(j)). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

To make a prima facie showing of disability discrimination, a plaintiff must allege that: "(1) [he] has a disability, or was regarded as disabled; (2) he was qualified for the job; and (3) he was subject to an adverse employment decision on account of his disability." *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016) (citing *LHC Grp., Inc.*, 773 F.3d at 697). Courts apply the same framework for an ADA claim that they apply for a TCHRA claim.[5]

1.   Whether Worrall Was Disabled or Regarded as Disabled

For this element of Worrall's prima facie showing of disability discrimination, the Court first analyzes Worrall's actual disability claim and then his regarded-as disability claim.

*i.   Worrall's actual disability claim*

In order to adequately allege an actual disability under the ADA, a plaintiff must plead facts giving rise to an inference that his or her impairment "substantially limits one or more 'major life activities.'" *Luedecke v. Tenet Healthcare Corp.*, 2015 WL 58733, at *5 (N.D. Tex. Jan. 5, 2015);

---

[5] The "TCHRA prohibits employers from discriminating 'because of . . . disability.'" *Harkey v. NextGen Healthcare, Inc.*, 2022 WL 2764870, at *3 (5th Cir. July 15, 2022) (quoting Tex. Lab. Code Ann. § 21.051 (West 1993). "Because TCHRA 'parallels the language of the ADA,' Texas courts follow ADA law in evaluating TCHRA discrimination claims." *Williams v. Tarrant Cnty. Coll. Dist.*, 717 F. App'x 440, 444–45 (5th Cir. 2018) (quoting *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 285–87 (5th Cir. 2004)).

(quoting *Hale v. King*, 642 F.3d 492, 500–01(5th Cir. 2011)). While the issue of what a plaintiff claiming disability based on COVID must plead to satisfy this burden is far from settled, a plaintiff must, at minimum, allege how his specific COVID symptoms impacted specific major life activities. *See McCone v. Exela Techs., Inc.*, 2022 WL 801772, at *4 (M.D. Fla. Jan. 14, 2022) (holding that "being infected with COVID-19, standing alone, does not meet the ADA's definitions of disability or impairment"); *but cf. Brown v. Roanoke Rehab. & Healthcare Ctr.*, 2022 WL 532936, at *4 (M.D. Ala. Feb. 22, 2022) (holding that a plaintiff's allegations regarding her COVID symptoms and how they impacted her ability to breath, concentrate, and work were sufficient to plead a disability at the motion-to-dismiss stage). Allegations regarding a need to isolate or quarantine, without more, do not support an inference of disability. *See Champion v. Mannington Mills, Inc.*, 538 F. Supp. 3d 1344, 1349 (M.D. Ga. May 10, 2021) (holding that allegations of an isolation period—being "diagnosed with COVID and unable to maintain in-person communications"—devoid of any specific symptoms caused by COVID that show how a major life activity was substantially impaired, does not constitute a disability).

Here, Worrall alleges that after "a positive COVID-19 test on March 11," he "began to feel the effects of COVID-19, such as a lack of energy to perform daily tasks." Doc. 1, Compl., ¶ 37. He "was told by CVS officials that he had to quarantine for fourteen . . . days," meaning "because he was positive with COVID-19 . . . his major life functions [were] impaired." *Id.* ¶ 61.

River Shack argues that Worrall's claims should be dismissed because "his bout with COVID-19 is precisely the type of short-term COVID that the EEOC Guidance and the ADA Guidance indicate did not qualify as an actual disability at the time of his termination." Doc. 7, Defs.' Br., 8. River Shack further argues that "regardless of whether [Worrall] was too sick to work or simply

instructed to isolate, the mere fact that [he] missed two weeks of work due to his COVID-19 diagnosis does not suggest that his ability to work was substantially limited and that he is consequently considered disabled under the ADA." *Id.*

EEOC guidelines, which courts may find persuasive in determining disability, say that mild symptoms of COVID that resolve within several weeks or asymptomatic cases of COVID do not constitute substantial impairment. *See* U.S. EEOC, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws (last updated July 12, 2022).[6] "This is so even though [a] person is subject to CDC guidance for isolation during the period of infectiousness." *Id.* But, "non-minor" COVID symptoms "do not necessarily have to last any particular length of time to be substantially limiting." *Id.*

Considering this EEOC guidance, the Court finds that Worrall has not sufficiently pleaded a disability. The fact that Worrall was instructed to isolate does not itself suggest that he suffered from a disability. *See Champion*, 538 F. Supp. 3d at 1349. The fact that his COVID symptoms limited his ability to work might support a disability finding, but Worrall has offered no specific facts that describe the severity of his symptoms or the difficulty he experienced in performing specific work activities. *See Luedecke*, 2015 WL 58733, at *6. Worrall's claim that he was unable to work due to a lack of energy caused by COVID, devoid of any other details about what work activities were substantially limited and how they were limited, does not raise an inference that his illness was an actual disability that substantially limited a major life activity. *See id.* at *5; Doc. 1, Compl., ¶¶ 37, 60–61.

---

[6] *See also Brown*, 2022 WL 532936, at *3.

Therefore, the Court **DISMISSES WITHOUT PREJUDICE** Worrall's actual disability claims under the ADA and TCHRA.

### ii.     *Worrall's regarded-as disability claim*

An individual is "regarded as" disabled when he is perceived as having a physical or mental impairment, regardless of whether the impairment actually limits or is perceived to limit a major life activity. 42 U.S.C. § 12102(3)(A). An individual cannot be "regarded as having such an impairment," however, if the impairment is "transitory and minor." 42 U.S.C. § 12102(3)(B). Transitory means "an actual or expected duration of 6 months or less." *Id.* Because "minor" is not statutorily defined, "courts determine whether an impairment is minor on a case-by-case basis considering factors such as symptoms, severity, the treatment required, the risk involved, and any surgical intervention anticipated or necessary." *Alvarado v. ValCap Grp.*, 2022 WL 953331, at *4 (N.D. Tex. Mar. 30, 2022) (citations omitted).

Worrall makes a regarded-as claim by alleging that River Shack was "aware of his disability[,]" "terminated [him] immediately following his disclosure of his disability[,]" and River Shack's "stated reason for termination is merely pretext and proven to be untrue." Doc. 1, Compl., ¶¶ 62–64. Worrall states he "had a lack of energy" due to his COVID illness and "was told by CVS officials that he had to quarantine for fourteen [] days." *Id.* ¶ 75. River Shack argues that Worrall's "symptoms involved nothing more than 'a lack of energy to complete daily tasks'" and that Worrall "missed two weeks of work due to his COVID[] diagnosis, . . . at the instruction of 'CVS officials' who told him 'to quarantine for fourteen days,' not because he was too sick to work." Doc. 7, Defs.' Br., 8.

"It may be a defense to a" regarded-as disability claim "that the impairment is . . . or would be . . . 'transitory and minor.'" 29 C.F.R. § 1630.15. The Fifth Circuit has not yet decided who has the burden of proving whether an impairment is transitory and minor. *See Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 302–03 (5th Cir. 2020).

The Court need not decide today whether Worrall or River Shack has the burden because Worrall's complaint, on its face, alleges that his COVID illness was transitory and minor. *See id.* at 307 n.14 (citing *Eshleman v. Patrick Indus., Inc.*, 961 F.3d 242, 246 n.25 (3d Cir. 2020) ("a regarded-as plaintiff alleging a transitory and minor impairment has failed to state a legally sufficient claim, even if the employer does not include a transitory and minor defense in its Answer")).

First, Worrall never alleges that his COVID illness lasted or was expected to last longer than the fourteen days that he was told to quarantine for. *See* Doc. 1, Compl., ¶ 75. Worrall thus pleads that his illness was transitory. *See* 42 U.S.C. § 12102(3)(B).

Next, though an allegation of a transitory illness is not necessarily fatal to a plaintiff's regarded-as disability claim if he can show that his transitory illness was non-minor, Worrall has not done so. *See Booth v. GTE Fed. Credit Union*, 2021 WL 5416690, at *5 (M.D. Fla. Nov. 20, 2021) (discussing how the plain meaning of the word "and" in the ADA's "transitory and minor" exception requires "both aspects to be present"). Worrall alleges he would have missed two weeks of work, not because he was too sick, but because he was told to quarantine due to his COVID diagnosis. Doc. 1, Compl., ¶ 75. River Shack was aware that Worrall tested positive for COVID (Doc. 7, Defs.' Br., 6) and that he was told to quarantine (*id.* at 8), but Worrall has not alleged any facts showing that River Shack regarded him as suffering from an ailment that was non-minor.

Therefore, the Court **DISMISSES WITHOUT PREJUDICE** Worrall's regarded-as disability claims under the ADA and TCHRA. The Court will now discuss Worrall's associational disability discrimination claims.

B.      *Associational Discrimination Under the ADA (Worrall's Wife)*

The ADA prohibits discrimination against a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association. 42 U.S.C. § 12112(b)(4). The Fifth Circuit has not "explicitly recognized a cause of action for discrimination based on association with a handicapped individual," but has laid out a test cited by district courts within this Circuit. *Grimes*, 505 F. App'x at 380 n.1; *see Moresi v. AMR Corp.*, 1999 WL 680210, at *2–3 (N.D. Tex. Aug. 31, 1999).[7] To make a prima facie showing of associational discrimination—if such an action were viable—a plaintiff must show: (1) his qualification for the job; (2) an adverse employment action; (3) the employer's knowledge of the employee's disabled relative; and (4) that the adverse employment action occurred under circumstances raising a reasonable inference that the relative's disability was a determining factor in the employer's adverse action. *Grimes*, 505 F. App'x at 380.

---

[7] The test laid out in *Moresi* is based on a decision from the Tenth Circuit. *Den Hartog v. Wasatch Acad.*, 129 F.3d 1076, 1082 (10th Cir. 1997). Though this case was decided before the ADA Amendments Act of 2008, its discussion of the provision is helpful in interpreting whether an associational discrimination claim can be based on a plaintiff's association with a person who is regarded as disabled. "The House Judiciary Committee sought to clarify the 'intent' element which a plaintiff must prove to prevail on" an associational discrimination claim. *Id.* The Committee explained that "[t]his section would not apply if the employer did not know of the disability of the other person." *Id.* (emphasis added). Though not explicitly stated, *Den Hartog* does not assert that the provision would apply if a claim was based on a plaintiff's association with a person who is merely regarded as disabled, rather than a person with a known disability. *See id.*

1.      Worrall's Wife's Actual Disability Claim[8]

Assuming without deciding that the Court would recognize an associational discrimination claim, Worrall would have to show that his wife had an actual disability that his employer knew of. *See Grimes*, 505 F. App'x at 380 n.1. Worrall alleges that his "wife was very ill with COVID symptoms[,] and he had to stay home to care for her." Doc. 1, Compl., ¶ 24. River Shack argues that Worrall "fails to allege any facts establishing that his wife was disabled within the meaning of the ADA and the TCHRA[,]" and the Court agrees. Doc. 7, Defs.' Br., 5. Worrall's wife may have been very ill, but as previously discussed, this Court will not assume that her "illness substantially limited a major life activity" if the pleadings do not state what life activity was substantially limited and how it was substantially limited, meaning Worrall fails to show that his wife's illness qualifies as a disability under the ADA. *See Luedecke*, 2015 WL 58733, at *5; 42 U.S.C. § 12112(b)(4).

Because Worrall fails to make a prima facie showing of associational discrimination, the Court **DISMISSES WITHOUT PREJUDICE** Worrall's ADA associational discrimination allegation. Because Worrall withdrew his claim for associational discrimination under the TCHRA, the Court **DISMISSES WITH PREJUDICE** the TCHRA associational discrimination allegation.

---

[8] In his response, Worrall states that "Defendants perceived" his wife "as disabled," but never raises this argument in his original complaint. Doc. 16, Resp., 4. He pleads only that River Shack "clearly and explicitly knew of the disabled relative." *See* Doc. 1, Compl., ¶ 56. The Fifth Circuit has not addressed whether an associational discrimination claim can be based on a plaintiff's association with a person regarded as disabled, rather than a person with a known disability, but other Circuits have found it cannot. *See Champion*, 538 F. Supp. 3d at 1349 (citing *E.E.O.C. v. STME, LLC*, 309 F. Supp. 3d 1207, 1215 (M.D. Fla. Feb. 15, 2018), *aff'd* 938 F.3d 1305 (11th Cir. 2019)); *supra* note 7. For these reasons, the Court considers only Worrall's associational discrimination claim for his wife's *known* disability. *See* 42 U.S.C. § 12102(1)(A) (emphasis added).

IV.

CONCLUSION

For the reasons discussed, the Court **GRANTS** River Shack's Motion to Dismiss (Doc. 6). The Court **DISMISSES WITHOUT PREJUDICE** Worrall's ADA and TCHRA discrimination claims for an actual disability, **DISMISSES WITHOUT PREJUDICE** Worrall's ADA and TCHRA discrimination claims for a regarded-as disability, **DISMISSES WITHOUT PREJUDICE** Worrall's ADA associational discrimination claim, and **DISMISSES WITH PREJUDICE** Worrall's TCHRA associational discrimination claim. Within **TWENTY-ONE (21)** days of the date of this Order, Worrall may file an amended complaint. From the date of Worrall's filing, River Shack has **FOURTEEN (14)** days to file an answer or motion to dismiss pursuant to Federal Rule of Civil Procedure 15(a)(3).

SO ORDERED.

SIGNED: August 15, 2022.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE